UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARIEL SALVADOR QUIROZ-MARTINEZ,<br><br>        Petitioner,<br><br>   v.<br><br>CHRISTOPHER CHESTNUT, et al.,<br><br>        Respondents. | No.  1:25-cv-1697 CSK<br><br><u>ORDER</u> |

Petitioner, a native of Nicaragua who entered the United States in December 2021, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  Petitioner was initially detained by immigration officials and released on his own recognizance in December 2021 pursuant to 8 U.S.C. § 1226.  In November 2025, petitioner reported to U.S. Immigration and Customs Enforcement ("ICE") in San Francisco and was detained pursuant to 8 U.S.C. § 1225.  This habeas action concerns petitioner's re-detention.  Pending before the Court is petitioner's motion for a preliminary injunction, which was heard on December 17, 2025.

///

///

///

---

[1]  The parties consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1).  (ECF No. 11.)

1

I.   PROCEDURAL BACKGROUND & CONVERSION TO A MOTION FOR PRELIMINARY INJUNCTION

On December 1, 2025, petitioner filed the petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging his detention and seeking release, or alternatively a bond hearing within seven days. (ECF No. 1.) Petitioner simultaneously filed a motion for temporary restraining order. (ECF No. 2.) On December 2 and 3, 2025, the district court issued orders directing petitioner to correct filing errors and set a briefing schedule on the motion. (ECF Nos. 5, 6.) On December 3, 2025, petitioner filed a notice of errata, accompanied by an amended memorandum of points and authorities, and an amended exhibit list. (ECF Nos. 7, 7-1, 7-2.) Petitioner seeks "emergency relief . . . directing respondents to release petitioner from his custody with no additional conditions of release that were not imposed prior to his detention in 2025 or to provide petitioner with individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a)." (ECF No. 2:1-5; 7-1 at 2.)

The parties consented to the jurisdiction of a U.S. Magistrate Judge, and on December 5, 2025, this case was reassigned to the undersigned. (ECF No. 11.)

On December 5, 2025, respondents filed their opposition and supporting exhibits. (ECF No. 12, 12-1.) Petitioner did not file a reply.

In setting the briefing and hearing schedule for the motion for a temporary restraining order, the district court ordered the parties to indicate whether they were amenable to converting the motion for temporary restraining order to a motion for preliminary injunction. 12/2/2025 Minute Order (ECF No 5). Respondents confirmed they are amenable to converting the motion for temporary restraining order to a motion for preliminary injunction. (ECF No. 12 at 1 n.1.) Petitioner confirmed at the hearing that he also agreed to convert the motion for temporary restraining order to a motion for preliminary injunction. (ECF No. 15.)

Because the standard for issuing a temporary restraining order and preliminary injunction is the same, see Stuhlbarg Int'l Sales Co. v. John D. Bush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001), respondents had notice and opportunity to respond in opposition, and petitioner and respondents agreed to conversion of the motion, petitioner's motion for a temporary restraining

order is converted to a motion for preliminary injunction.

After the case was reassigned to the undersigned, this Court continued petitioner's motion for hearing from December 11, 2025 to December 17, 2025 after consulting with the parties regarding their availability. The hearing was held on December 17, 2025 by Zoom. Petitioner appeared through counsel, Ann F. Barhoum. James Conolly, Assistant U.S. Attorney, appeared for respondents.

II.   FACTUAL BACKGROUND

Petitioner is a native of Nicaragua. (ECF No. 12-1 at 2-3.) On December 21, 2021, petitioner entered the United States, and a border patrol agent found petitioner in the Rio Grande Valley near Hidalgo, Texas. (ECF No. 12-1 at 2-5.) Petitioner was determined to be "an alien who[] illegally entered the United States," without permission from the Department of Homeland Security ("DHS"), and was arrested and transported to the El Paso Central Processing Center. (Id. at 3.) Petitioner reported "he does fear harm or persecution should he be returned to his native country." (Id.)

After processing, petitioner was enrolled in the Intensive Supervision Alien Program ("ISAP"). (ECF No. 12 at 2.) On December 30, 2021, petitioner was notified that he had been arrested and placed in removal proceedings. (ECF No. 12-1 at 1.) ICE released petitioner "[i]n accordance with section 236 of the Immigration and Nationality Act,"[2] on his own recognizance on conditions set forth on ICE Form I-220A, which petitioner signed. (Id. at 1, 5.) One of the conditions of petitioner's release was: "You must not change your place of residence without first securing written permission from the officer listed above." (Id. at 1.) Petitioner was warned that failure to comply with the conditions of his release "may result in revocation of [his] release and [his] arrest and detention" by ICE. (Id.) Petitioner informed ICE that petitioner would reside at an area within San Jose, California.[3] (Id. at 1, 5.) Petitioner signed the I-220A form,

---

[2] The Immigration and Nationality Act ("INA") section 236 is codified at 8 U.S.C. § 1226.

[3] The area of responsibility of the San Jose, California, ICE Enforcement and Removal Operations ("ERO"), is a sub-office of the ICE ERO San Francisco, California Regional Field Office. (ECF No. 12 at 2, n.2.)

confirming he had been read and explained the form in Spanish, and had received a copy of the form.  (Id. at 1.)

Petitioner claims he previously changed his address with the San Francisco Immigration Court on October 6, 2025.  (ECF No. 7-1 at 4.)

On November 3, 2025, petitioner reported to the ICE ERO San Francisco, California Regional Field Office.  (ECF No. 12-1 at 5.)  Deportation officers determined petitioner had moved to Fremont, California without prior permission, and petitioner was taken into custody.  (Id.)  ICE canceled petitioner's order of release based on petitioner's failure to comply with the conditions of release.  (Id. at 1, 5.)

Petitioner sought a custody redetermination under 8 C.F.R. § 1216, and on November 25, 2025, petitioner's case came before an immigration judge who denied petitioner's request "because [n]o authority to grant bond under Hurtado." (ECF No. 12-1 at 7 (apparently referring to Matter of Yajure Hurtado, 29 I. & N. Dec. 216 (BIA 2025)).

Petitioner was placed in removal proceedings by DHS before the San Francisco Immigration Court pursuant to 8 U.S.C. § 1229a.  (ECF No. 1 at 13.)  Petitioner was charged by ICE with, among other things, being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) as someone who entered the United States without inspection.  (Id.)  Petitioner's next immigration hearing was set for January 6, 2026, but his case was removed from the San Francisco  Immigration Court's calendar.  (Id.)  Petitioner's case was transferred to the Adelanto Immigration Court, and a master hearing is set for January 6, 2026.[4]  (Id.)

Petitioner is currently detained at the California City ICE Processing Center.[5]  (Id. at 14.)

III.   LEGAL STANDARDS

"A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008).  To qualify for injunctive relief, plaintiff

---

[4] Petitioner notes that there was no change of venue motion or order granting a change of venue from the San Francisco Immigration Court to the Adelanto Immigration Court.  (ECF No. 1 at 13.)  The Adelanto Immigration Court is in Adelanto, San Bernardino County, California.

[5] Petitioner is currently married to Ana Carolina Medal Zelaya, who is a "rider" on petitioner's case.  (Id. at 14.)  Ms. Medal's case is set for individual hearing on July 2, 2026.  (Id.)

4

must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood that he will suffer irreparable harm without an injunction; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. Id. at 20. A deficiency in any element precludes relief. Id. at 23. "[I]f a plaintiff can only show that there are serious questions going to the merits -- a lesser showing than likelihood of success on the merits -- then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two Winter factors are satisfied." Friends of the Wild Swan v. Weber, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

IV. DISCUSSION

Generally, noncitizens are subject to civil immigration detention only if the noncitizen presents a risk of flight or danger to the community. See Zadvydas v. Davis, 533 U.S. 678, 690 (2001) (holding that 8 U.S.C. § 1231(a)(6) does not authorize indefinite detention). Petitioner contends that respondents are subjecting petitioner to mandatory detention under 8 U.S.C. § 1225, when petitioner has been, and should continue to be, subject to 8 U.S.C. § 1226(a), and should not be re-detained without a bond hearing because it violates his constitutional right to due process. Respondents do not argue that petitioner is a flight risk or a danger to the community, and instead argue that petitioner's detention is mandatory under § 1225(b)(2)(A), though "[u]ntil recently" the government's position was completely different—that § 1226 applied. (ECF No. 12 at 5; see ECF No. 7-1 at 2.) As the government acknowledged at the hearing and Petitioner argued, new July 2025 DHS guidance changed the government's position. (ECF No. 7-1 at 2; ECF No. 1 ¶¶ 44-45.)

A. Likelihood of Success on the Merits

The Court finds petitioner has established a likelihood of success on the merits of his statutory and due process challenges to his detention.

*1. Applicability of 8 U.S.C. § 1226(a) or 8 U.S.C. § 1225(b)(2)*

The issue here is whether petitioner, who has no criminal record, works two jobs, and has lived in the United States since December 2021, is subject to discretionary release as first ordered by immigration officials under § 1226(a) as petitioner contends (ECF No. 7-1 at 5-13), or

whether, petitioner is now subject to mandatory detention under § 1225(b)(2)(A), as argued by respondents (ECF No. 12 at 3-6).  The government argues that § 1225(b)(2)(A) applies to petitioner because he is an applicant for admission.

The Court concludes that § 1226 applies to petitioner.  As an initial matter, it is undisputed that petitioner was released on his own recognizance by immigration authorities on December 30, 2021.  The Order of Release on Recognizance issued by DHS to petitioner on December 30, 2021, was issued "[i]n accordance with section 236 of the INA." (ECF No. 12-1 at 1.)  Section 236 of the INA is codified at 8 U.S.C. § 1226; section 235 of the INA is codified at 8 U.S.C. § 1225.

This Court agrees with and joins the majority of courts nationwide, including the Eastern District of California, in rejecting respondents' interpretation of Sections 1225 and 1226.  See Rodriguez Vazquez v. Bostock, 2025 WL 2782499, at *1, 21-22 (W.D. Wash. Sept. 30, 2025) (concluding, after a thorough analysis, that "the government's [interpretation of § 1225] belies the statutory text of the INA, canons of statutory interpretation, legislative history, and longstanding agency practice"); J.Y.L.C. v. Bostock, 2025 WL 3169865, at *2 (D. Or. Nov. 12, 2025) (collecting more than thirty cases rejecting the government's assertion that § 1225 empowers the DHS to arrest and hold a noncitizen present without legal status who has spent years in the U.S.); Cardona-Lozano v Noem, 2025 WL 3218244, at *6 (W.D. Tex. Nov. 14, 2025) ("Repeatedly, [district courts across the country] have found that DHS and the [Board of Immigration Appeals'] construction of the INA is incorrect and that petitioners who have long resided in the United States but are being held under § 1225 are entitled to relief.") (collecting cases)); Faizyan v. Casey, 2025 WL 3208844, at *5 (S.D. Cal. Nov. 17, 2025) (holding that § 1226 applies to a petitioner who "DHS has consistently treated" as subject to discretionary detention and "who has been residing in the United States for two years" (internal quotation marks and citation omitted)); Josue I.C.A. v. Lyons, 2025 WL 3496432, at 3 n.6 (E.D. Cal. Dec. 5, 2025) (collecting cases); Morales-Flores v. Lyons, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (collecting cases) ("Courts nationwide, including this one, have overwhelmingly rejected respondents' arguments and found DHS's new policy unlawful.").

"These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [Petitioner], living in the interior of the country." Salcedo Aceros v. Kaiser, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases). By contrast, "[t]he government's proposed reading of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." Guerro Lepe v. Andrews, 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (collecting cases). This Court incorporates and adopts the thorough and persuasive reasoning of the district court in Lepe, 2025 WL 2716910, at *3-9. As the district court found in Lepe, this Court also rejects the new interpretation of 8 U.S.C. § 1225(b)(2)(A) by respondents, and finds that petitioner is detained under 8 U.S.C. § 1226(a) and its implementing regulations, because petitioner has resided in this country for almost four years since December 2021, petitioner was released on his own recognizance on December 30, 2021 pursuant to § 1226, and petitioner's November 2025 arrest and detention was not upon his arrival to the United States. Therefore, petitioner is likely to succeed on the merits of his claims that he was wrongfully detained without a bond hearing under section 8 U.S.C. § 1226(a).

### 2. Due Process

Petitioner argues he has a fundamental liberty interest in freedom from imprisonment and in a bond hearing. (ECF No. 7-1 at 17 (quoting Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (internal quotation marks and citation omitted)); (ECF No. 1 ¶¶ 25, 31-33, 86). Respondents' asserted compliance with the statutes does not demonstrate they have satisfied the requirements of the Due Process Clause, "which of course constitute the supreme law of the land[.]" Tot v. United States, 319 U.S. 463, 472 (1943) (Black, J., concurring). As explained below, petitioner's present detention likely violates his due process rights under the Fifth Amendment.

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. "It is clear that

7

commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." Foucha v. Louisiana, 504 U.S. 71, 80 (1992). "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693.

The Court analyzes petitioner's due process claim "in two steps:  the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." Garcia v. Andrews, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)).

"The Due Process clause applies to noncitizens in this country in connection with removal proceedings, even if their presence is unlawful or temporary." Tinoco v. Noem, 2025 WL 3567862, at *5 (E.D. Cal. Dec. 14, 2025) (citing Zadvydas, 533 U.S. at 690).  At the hearing, the Court addressed respondent's contention that petitioner failed to identify the source of petitioner's liberty interest (ECF No. 12 at 6).  The Court rejects this argument where the petitioner addressed freedom from imprisonment, entitlement to a bond hearing, and his prior release on his own recognizance based on the determination that petitioner was not a flight risk or a danger to the community, and the record before the Court includes the December 30, 2021 order releasing petitioner on his own recognizance pursuant to § 1226.  (See ECF Nos. 1, 7-1, 12-1 at 1.)

The Supreme Court has found that a protected liberty interest may arise from a conditional release from physical restraint. Young v. Harper, 520 U.S. 143, 147-49 (1997).  Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute.  See id. (finding due process requires pre-deprivation hearing before revocation of preparole); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (same, in probation context); Morrissey v. Brewer, 408 U.S. 471, 482 (1972) (same, in parole context).  To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey." Gonzalez-Fuentes v. Molina, 607 F.3d

8

864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In Morrissey, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." Morrissey, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring, his "condition is very different from that of confinement in a prison." Id. "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." Id. The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." Id. (quotations omitted). Therefore, a parolee possesses a protected interest in his "continued liberty." Id. at 481-84.

Here, immigration officials' 2021 release of petitioner on his own recognizance pending his immigration proceedings are similar, because it allowed petitioner to live in California subject to immigration supervision, but outside of custody for almost four years. Such time allowed plaintiff to form "enduring attachments of normal life." Id. at 482. This conditional release allowed petitioner to become gainfully employed, holding two jobs, to help support him and his wife. This Court finds that petitioner's original release and years out of custody gave rise to a constitutionally protected liberty interest, and respondents' argument that § 1225(b)(2)(A) applies is not supported as described above. See, e.g., W.V.S.M. v. Wofford, 2025 WL 3236521, at *4 (E.D. Cal. Nov. 19, 2025). Moreover, "the government previously represented to petitioner that his release was pursuant to 8 U.S.C. § 1226(a)." F.M.V. v. Wofford, 2025 WL 3083934, at *4 (E.D. Cal. Nov. 4, 2025).

Therefore, this Court finds that petitioner's prior release pursuant to 8 U.S.C. § 1226(a) created a reasonable expectation that he would be entitled to retain his liberty as long as he was not a flight risk and did not pose a danger to the community. See Perry v. Sindermann, 408 U.S. 593, 601-03 (1972) (finding reliance on governmental representations may establish a legitimate claim of entitlement to a constitutionally-protected interest); F.M.V., 2025 WL 3083934 at *4. This Court concludes that petitioner has a protected liberty interest in his release. See Guillermo

M. R. v. Kaiser, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is inherent in the Due Process Clause"); Ortega v. Kaiser, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest); F.M.V., 2025 WL 3083934 at *4-5.

Next, the Court turns to what procedures are necessary to ensure that the deprivation of that protected liberty interest meets the demands of the Constitution. The Ninth Circuit has "regularly applied Mathews [v. Eldridge, 424 U.S. 319 (1976)], to due process challenges to removal proceedings." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022); see also Hernandez, 872 F.3d at 993 (applying Mathews factors in immigration detention context). In applying the Mathews test to a procedural due process claim to a detention under 8 U.S.C. § 1226, the Ninth Circuit explained that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz, 53 F. 4th at 1206-07 (citations omitted). Under Mathews, the Court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest. Mathews, 424 U.S. at 335.

First, petitioner has a private interest in remaining free from detention. "Freedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690 (citing Foucha, 504 U.S. at 80 ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.); Hernandez, 872 F.3d at 981 ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process."). For over three years and ten months, petitioner was free from custody before his re-detention, and was gainfully employed, working two different jobs at the Osaka Marketplace and the Tawa Retail Group, Inc., to support him and his wife. (ECF Nos. 7-1 at 14, 7-2 at 16.) Petitioner has no criminal record, which respondents do not dispute. Respondents point to no violation of petitioner's prior parole conditions other than the alleged failure to obtain prior permission for his address change. Petitioner asserts that he previously changed his address with the San Francisco

Immigration Court on October 6, 2025 (ECF No. 7-1 at 4). The duration of his conditional release demonstrates petitioner has a considerable interest in his continued liberty. See Pinchi v. Noem, 2025 WL 2084921, at *3 (N.D. Cal. July 25, 2025) (in the past five years, petitioner developed "extensive relations of support and interdependence" that "underscore the high stakes of [his] liberty."); Ortega v. Bonnar, 415 F. Supp. 3d 963, 963 (N.D. Cal. 2019) (holding that petitioner had a substantial liberty interest where he had been released from custody for 18 months and was living with his wife, spending time with his mother and other family members, working as a bicycle mechanic, and developing friendships in his community).

Next, the Court turns to the second Mathews factor, the risk of erroneous deprivation to petitioner, and finds this factor weighs in petitioner's favor. "The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing." See A.E. v. Andrews, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). That petitioner reported to ICE on November 3, 2025 demonstrates he was not a flight risk. Respondents do not contend that petitioner is or was a flight risk or a danger to the community. Even if petitioner failed to properly obtain permission to change his address, as respondents assert, such violation of his parole condition would warrant a pre-detention hearing rather than automatic detention. "That the Government may believe it has a valid reason to detain petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process." E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025).

Here, petitioner has been detained since November 3, 2025, without being given an individualized bond hearing to evaluate whether petitioner is a flight risk or a danger to the community. No neutral arbiter under 8 U.S.C. § 1226 has determined whether petitioner's alleged failure to properly obtain permission to change his address demonstrates petitioner is a flight risk or a danger to the community. Respondents must demonstrate that petitioner's re-detention is reasonably related to a valid government purpose. See Zadvyadas, 533 U.S. at 690;

11

see, e.g., Rodriguez Diaz v. Kaiser, 2025 WL 3011852, at *11 (N.D. Cal. Sept. 16, 2025) ("If respondents wish to establish that re-detention is warranted by raising the effect of . . . [petitioner's] six alleged bond violations, a hearing before a neutral adjudicator provides a forum to do so."); see also Cajina v. Wofford, 2025 WL 3251083, at *1, 6 (E.D. Cal. Nov. 21, 2025) (ordering petitioner's immediate release and enjoining and restraining respondents from re-detaining petitioner absent a pre-detention hearing, despite petitioner being charged with driving under the influence ("DUI")); Nolasco-Gomez v. Noem, 2025 WL 3514758, at *1 n.1, 2 (D. Nev. Dec. 8, 2025) (granting preliminary injunction, requiring a bond hearing under § 1226(a) by Dec. 12, 2025, enjoining the government from denying release on bond based on § 1225(b)(2), and if bond is granted, ordering petitioner's immediate release, despite petitioner being arrested for DUI); Tinoco, 2025 WL 3567862, at *6-8 (granting temporary restraining order and ordering petitioner's immediate release without any additional restrictions, and enjoining respondents from re-detaining petitioner without 7 day prior notice to petitioner and a pre-deprivation hearing before a neutral arbiter, and ordering respondents to show cause why preliminary injunction should not be issued on the same terms, despite petitioner's arrest for DUI and subsequent conviction to wet reckless driving).

Finally, with regard to the third Mathews factor, this Court recognizes that the government has an interest in enforcing immigration laws, but respondents' interest in detaining petitioner without a hearing is "low." Ortega v. Bonnar, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. March 3, 2025. Detention hearings in immigration courts are routine, and impose a "minimal cost." Doe, 787 F. Supp. 3d at 1094. In addition, here, the government's interest is even lower because petitioner was previously released on his own recognizance after immigration officials determined he was not a flight risk or danger to the community, he lived in the country for almost four years after his prior release, he has no criminal record, he appeared for his prior detention hearing, and he has checked in as required. See Pinchi, 2025 WL 1853763, at *2.

Overall, balancing these factors, this Court finds that the Mathews factors weigh in favor of finding petitioner is entitled to a bond hearing, and petitioner should have been provided such a

hearing before he was detained. "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted) (emphasis added). In criminal cases, parolees released on parole, which does not provide "absolute liberty," but rather "conditional liberty properly dependent on observance of special parole restrictions," are also entitled to due process, including a predeprivation hearing before their parole can be revoked. Morrissey, 408 U.S. at 480-86. "Numerous district courts have held that these principles extend to the context of immigration detention." F.M.V., 2025 WL 3083934 at *6 (collecting cases). Respondents point to no reasons a pre-deprivation hearing could not be held, and provided no evidence of "urgent concerns," thus, "a pre-deprivation hearing is required to satisfy due process." Guillermo M. R. v. Kaiser, 791 F. Supp. 3d at 1036. Accordingly, the Court finds that petitioner has established a likelihood of success on the merits of his due process claims.

B. Irreparable Harm

The second factor requires petitioner to demonstrate that he "is likely to suffer irreparable harm in the absence of preliminary relief." Winter, 555 U.S. at 20. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012); Baird v. Bonta, 81 F.4th 1036, 1040 (9th Cir. 2023) (Where a plaintiff alleges a constitutional violation and "shows he is likely to prevail on the merits, that showing usually demonstrates he is suffering irreparable harm no matter how brief the violation."). Here, in addition to the deprivation of his physical freedom, petitioner's re-detention imposes an economic burden because petitioner is unable to continue working two jobs, separates petitioner from his wife, and subjects petitioner to "significant stress and anxiety." (ECF No. 7-1 at 14, 7-2 at 16.) "[T]he subpar medical and psychiatric care in ICE detention facilities [and] the economic burdens imposed on detainees and their families as a result of detention" are "concrete" examples of "irreparable harm" sustained during civil detention. Hernandez, 872 F.3d at 995; see also Norsworthy v. Beard, 87 F. Supp. 3d 1164, 1192 (N.D. Cal.), appeal dismissed and remanded, 802 F.3d 1090 (9th Cir. 2015) ("Emotional distress, anxiety, depression, and other

psychological problems can constitute irreparable injury.") (citations omitted). Respondents do not dispute petitioner's claims that he will be irreparably injured by this re-detention. "As other courts that have faced this issue have explained, the violation of petitioner's statutory rights causes 'immediate and irreparable injury.'" Lepe, 2025 WL 2716910, at *9 (citations omitted).

### C. Balance of Hardships and Public Interest

Finally, the Court turns to the last two Winter factors, which merge when the government is the nonmoving party. Nken v. Holder, 556 U.S. 418, 435 (2009); Baird, 81 F.4th at 1040 (internal citations omitted). Petitioner argues that the balance of hardships weighs in favor of injunctive relief because the policy preventing petitioner from obtaining bond is inconsistent with federal law. (ECF No. 7-1 at 15 (quoting Moreno Galvez v. Cuccinelli, 387 F. Supp. 3d 1208, 1218 (W.D. Wash. 2019) ("Because plaintiffs are likely to succeed on the merits of their claims that the government's new policy is inconsistent with federal law, arbitrary and capricious, and procedurally defective, the balance of hardships and public interest factors weigh in favor of a preliminary injunction.").) Though the government has an interest in enforcing immigration laws, the issue here is whether the government can re-detain the petitioner without a bond hearing almost four years after the government released the petitioner on his own recognizance. This Court agrees with petitioner. Petitioner faces a loss of liberty, an inability to work, separation from his wife, and the stress and anxiety incurred during detention.

In addition, avoiding such "preventable human suffering" strongly tips the balance in favor of petitioner. Hernandez, 872 F.3d at 996 (quoting Lopez v. Heckler, 713 F.2d 1432, 1437 (9th Cir. 1983)). On the other hand, respondents face no hardship, because respondents must release a person the government previously released and who has since lawfully resided in the United States. Respondents "cannot reasonably assert that [they are] harmed in any legally cognizable sense by being enjoined from constitutional violations." Zepeda v. U.S. I.N.S., 753 F.2d 719, 727 (9th Cir. 1983); see also Rodriguez v. Robbins, 715 F. 3d 1127, 1145 (9th Cir. 2013) ("[The government] cannot suffer harm from an injunction that merely ends an unlawful practice[.]"). Further, the public has a strong interest in requiring respondents to follow the law and comply with due process. In addition, as recognized by the Ninth Circuit, "costs to the public

of immigration detention are staggering[.]" Hernandez, 872 F.3d at 995; see also Index Newspapers LLC v. U.S. Marshals Serv., 977 F.3d 817, 838 (9th Cir. 2020) ("It is always in the public interest to prevent the violation of a party's constitutional rights."). Thus, the Court finds that the balance of hardships and the public interest weigh in favor or granting petitioner injunctive relief.

### D. Remedy

Overall, this Court finds that petitioner is likely to succeed on the merits of his claims. As stated in Lepe, "[t]he purpose of a preliminary injunction is to return the parties to the status quo ante, which is "not simply [] any situation before the filing of a lawsuit, but instead [] 'the last uncontested status which preceded the pending controversy.'" Lepe, 2025 WL 2716910 at *10 (quoting GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000)). Here, as in Lepe, respondents argue that petitioner was detained under 8 U.S.C. § 1225(b)(2)(A), and denies petitioner was detained under 8 U.S.C. § 1226. (ECF No. 12.) Respondents do not argue that petitioner presents a flight risk or a danger to the community. Because the Court finds that 8 U.S.C. § 1225(b)(2)(A) does not apply to petitioner, respondents' argument is unavailing, and petitioner has shown a likelihood of success on the merits. Respondents fail to provide any other basis for petitioner's detention, and do not argue that petitioner presents a danger to the community or is a flight risk. Therefore, this Court finds the requirements for issuing a preliminary injunction are met. Petitioner's immediate release is required to return him to the status quo before the pending controversy. Respondents are ordered to release petitioner immediately. If the government seeks to re-detain petitioner in the future, the government must prove that petitioner is a flight risk or danger to the community at a bond hearing before a neutral arbiter pursuant to 8 U.S.C. § 1226(a).

### V. BOND

The Court exercises its discretion under Federal Rule of Civil Procedure 65(c) to dispense with the filing of bond. "[T]here is no realistic likelihood of harm to the [respondents] from enjoining [their] conduct." Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003); see Diaz v. Brewer, 656 F.3d 1008, 1015 (9th Cir. 2011). Therefore, no security is needed to ensure that

respondents will be reimbursed for "costs and damages sustained by . . . hav[ing] been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).  Courts regularly waive security in cases like this one.  See, e.g., Zakzouk v. Becerra, 2025 WL 2899220, at *8 (N.D. Cal. Oct. 10, 2025).

## VI. CONCLUSION AND ORDERS

Accordingly, IT IS HEREBY ORDERED that:

1. Petitioner's motion for temporary restraining order, which is converted to a motion for preliminary injunction (ECF No. 2), is granted.
2. Petitioner Ariel S. Quiroz-Martinez shall be released immediately from respondents' custody.
3. Respondents are enjoined and restrained from re-detaining petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that his physical custody is legally justified.
4. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.
5. Within seven days of this order, the parties are ordered to file a Joint Status Report as to petitioner's status, and whether a briefing schedule needs to be set to address the petition on the merits.

Dated: December 18, 2025

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

/1/quir1697.pi.imm